## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN R. SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20-cv-00115 |
| | ) | |
| HAYT, HAYT & LANDAU, LLC; | ) | |
| ROBERT L. BAROSKA III; MARTIN | ) | |
| RUBEN; BRYAN J. POLAS; ASHLEY | ) | |
| PALAIA; JOSHUA T. MCNAMARA, | ) | |
| ROBERT W. CUSICK, | ) | |
| | | |
| Defendants. | | |

## <u>OPINION</u>

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint, in which Plaintiff alleges that Defendants engaged in numerous deceptive or harassing debt-collection behavior or other acts that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (ECF No. 1-2.). This case appears to center on two (2) collection lawsuits filed with the local state magisterial district judge in Mercer County, Pennsylvania, and two (2) letters about those lawsuits and the collection claims in them that were sent to Mr. Shaw.

Plaintiff Warren R. Shaw ("Mr. Shaw" or the "Plaintiff") initially filed this case in state court against the following Defendants: the Law Firm of Hayt, Hayt, & Landau LLC ("HHL") and individually named Defendants: Robert L. Baroska, Martin Rubin, Bryan J. Polas, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick—each of whom work as attorneys at HHL (hereinafter referred to as the "individual Defendants" or collectively referred to as the

1

"Defendants").[1] Defendants thereafter timely removed the action to this Court and filed the Motion

to Dismiss now before the Court. The matter is fully briefed and ripe for consideration.[2]

## I.    BACKGROUND

Based upon the facts as alleged in Mr. Shaw's Complaint; the parties' briefing of the Motion

to Dismiss; and all other submissions which the Court appropriately considers,[3] this case centers on

two (2) main events, which are summarized as follows.

Mr. Shaw's Complaint refers to two (2) allegedly identical legal actions filed by

Defendants in the local Magisterial District Court of Mercer County (PA) in November and

December 2019.[4] Those actions sought to collect two (2) unpaid debts associated with Capital One

Bank Accounts allegedly taken out in Mr. Shaw's name (one debt in the amount of $5,811.74 and

another in the amount $2,365.19). (ECF Nos. 12-1 and 12-2.) Mr. Shaw contends that these

collection actions, initially filed by HHL's attorneys, constitute debt collection practices in

---

[1] In Defendants' Memorandum in Support of their Motion to Dismiss (ECF No. 12), Defendants note that the individually named Defendant Joshua T. McNamara is mispleaded in Mr. Shaw's Complaint (specifically, that his name is misspelled). Accordingly, the Court will refer to that individually named Defendant the way in which it is spelled in Defendants' briefing.

[2] The Court notes that Mr. Shaw's Response to Defendants' Motion to Dismiss, titled "Brief in Opposition to Defendants' Motion for Summary Judgment," appears wholly unrelated to the present matter and copied wholesale from a filing in an unrelated case on this Court's docket. (ECF No. 16.) As such, in resolving the present Motion, the Court will focus its attention only on the briefing that is relevant to Mr. Shaw's case, and gives no weight to that filing. That filing is emblematic of the form and content of Mr. Shaw's Complaint, *e.g.*, conclusory block quotes from unrelated reported cases and an appendix that appears to be a generalized summary of what the Plaintiff believes the FDCPA provides.

[3] The Court need not consider the "Objection to Dismissal" (ECF No. 18) filed by Mr. Shaw in response to Defendants' Reply (ECF No. 17) because Mr. Shaw submitted these "Objections" after briefing on the pending Motion closed and without leave from this Court, which is not in accord with this Court's Standing Order and Procedures on Civil Motion Practice. Accordingly, Mr. Shaw's Objection to Dismissal and the Defendants' Reply to Plaintiff's Objection to Dismissal (ECF No. 19) will not be considered by the Court in deciding this Motion.

[4] They are not identical. Each claims a substantially different amount due and owing, and each is filed at a distinct magistrate court docket number. (ECF Nos. 12-1 and 12-2.) The verbiage asserting the claim alleged is the same, but that use of the same form of pleading does not make them "identical" cases. They are different cases, seeking different amounts of recovery.

violation of the FDCPA (1) "for lack of proper Attorney review" (ECF No. 1-2, at 6 ¶ 7) and (2) because the lawsuits amount to "abusive and harassing [behavior] without any supporting evidence," specifically lacking reference to "any card holder agreement" or "statements of accounts." (*Id*. at 13 ¶ 20.) In sum, Mr. Shaw asserts that these two civil complaints filed against him on behalf of Capital One Bank violated the following sections of the FDCPA: §§ 1692d(1); 1692e(2)(A), (B); 1692e(3); 1692e(4);1692e(5); 1692e(8); 1692e(10); and 1692f(1). (*Id*. at 14 ¶ 21.)

Second, Mr. Shaw says that he received an allegedly "very demanding extortion letter", in violation of § 1692e(10), in which Mr. Shaw contends that HHL stated that if Mr. Shaw continued failing to make payments, a collection action would be brought against him. (*Id*. at 13 ¶ 19.) Mr. Shaw also asserts that HHL's letter, by its language, specifically violated § 1692e(4), stating that if he "did not execute the OFFERS TO RESOLVE LAWSUIT" via the two (2) payment options presented by HHL in the letter, "they would prevail in litigation without ever producing any evidence at all." (*Id*.) Further, without citing to any specific FDCPA provisions, Mr. Shaw asserts that because HHL allegedly never ascertained the cardholder agreement or verified his address prior to sending the letter, the letter constitutes harassment in violation of the FDCPA.

As for the individual Defendants, Mr. Shaw contends that by acting under the "command of" HHL, they engaged in "abusive, deceptive, harassing, oppressive, misleading [ ], false and unfair practices of debt collectors," namely, by assisting in preparing and filing the allegedly identical lawsuits brought against Mr. Shaw in Pennsylvania state court, and further, by "attempt[ing] to collect debt" to support their respective employment positions with HHL.[5] (*Id.* at

---

[5] Mr. Shaw more generally asserts in a somewhat "catchall" fashion that on these alleged facts, Defendants have violated various provisions of the UCC, federal and state rules of civil procedure and evidence; the Racketeer Influenced and Corrupt Organizations (RICO) Act; have engaged in fraud and negligent misrepresentation; and finally, should be investigated and prosecuted under the Hobbs Act, 18 U.S.C. § 1951. (ECF No. 1-2, at 13, 29–36.). Those assertions are wholly conclusory and unsupported. Notably, one thing that this civil action cannot accomplish

10 ¶ 13.) It is these two (2) events—the collection actions in Pennsylvania local state court (at the district magistrate level) and the correspondence from HHL—that give rise to the alleged facts upon which Mr. Shaw relies as support for his claims that both the individual Defendants—attorneys employed by HHL—and HHL itself violated various provisions of the FDCPA.

## II.   LEGAL STANDARD

### A.   *Pro Se* Litigants

*Pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If the court can reasonably read the pleadings to state a valid claim on which the litigant could prevail, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). Accordingly, a district court should construe the allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997), *overruled on other grounds by Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001). Because Mr. Shaw is a *pro se* litigant, this Court will consider the pleadings in that vein, and he will therefore be given considerable but not limitless pleading latitude.

---

is a directive that a federal criminal investigation of alleged Hobbs Act violations be undertaken. Such blunderbuss generic assertions will not carry the day.

**B.  <u>Motion to Dismiss Pursuant to 12(b)(6)</u>**

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The Supreme Court's decision in *Ashcroft v. Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555. In reading the complaint, the Court should "accept all factual allegations as true, construe the complaint in a light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc*., 861 F.3d 426, 431 (3d Cir. 2017) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

The Third Circuit further guides lower courts to utilize a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id*. Third, the Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id*. If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the motion to dismiss should be denied. *See Fowler*, 578 F.3d at 210–11. Finally, in ruling on a motion to dismiss, "a court may consider only the complaint, attached exhibits, matters of public record, and undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents." *Panthera Rail Car LLC v. Kasgro Rail Corp*., 985 F. Supp. 2d 677, 683 (W.D. Pa. 2013) (internal quotation marks omitted) (quoting *Mayer v. Belichick*, *605* F.3d 223, 230 (3d Cir.2010)).

### III.    DISCUSSION

In resolving this Motion, the Court only considers the nonconclusory allegations in the Complaint that, read in light of Mr. Shaw's *pro se* status, are sufficiently "well-pleaded" for the Court to ascertain whether the allegations "show" that Mr. Shaw is entitled to the relief sought. *See Fowler*, 578 F.3d at 210–11.

To prevail on an FDCPA claim, a plaintiff must establish the following: "(1) [the plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Daniels v. Solomon & Solomon P.C.*, 751 F. App'x 254, 256 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)) (citing *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015)).

As Defendants do not dispute at this stage that they are debt collectors involved in an attempt to collect a debt as defined by the FDCPA, the remaining issues here are whether the Complaint sufficiently "shows" (1) that the individual Defendants, attorneys working for HHL, violated a provision of the FDCPA in attempting to collect a debt; and/or (2) that HHL violated a provision of the FDCPA in attempting to collect a debt. Viewed through that lens, Mr. Shaw's allegations as to the individual Defendants and as to HHL fail to plausibly show that Mr. Shaw is entitled to relief in accord with the FDCPA. The Court will first address the allegations made against the individual Defendants and then turn its attention to Mr. Shaw's assertions against HHL.

### A.    Allegations Pertaining to the Individual Defendants

The FDCPA applies to attorneys who are regularly engaged in consumer debt-collection litigation. *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). One year after the Supreme Court's decision in *Heintz*, Congress amended the FDCPA, creating a carve-out to protect attorneys from

6

alleged violations, as laid out specifically in § 1692e(11), for any "formal pleading made in connection with a legal action." *See Rhodes v. Diamond*, No. 09-01302, 2010 WL 2804821, at *2 n.2 (E.D. Pa. July 14, 2010), *vacated and remanded on other grounds by* 433 F. App'x 78 (3d Cir. 2011) (citing 15 U.S.C. § 1692e(11), *as amended by* Pub. L. 104–208, § 2305(a), 110 Stat. 3009, 3009–425 (1996)). The Supreme Court's interpretation of the FDCPA still stands as it pertains to attorneys allegedly engaging in harassing or deceptive debt-collection behavior, among other scenarios. For example, an attorney regularly engaged in collecting consumer debt may be found to have violated the FDCPA if the attorney "uses violence, obscenity, or repeated annoying phone calls; falsely represents the character, amount or legal status of a debt, or uses unfair or unconscionable means to attempt to collect on a consumer debt." *Strader v. U.S. Bank Nat'l Ass'n*, No. 17-00684, 2018 WL 741425, at *12 (W.D. Pa. Feb. 7, 2018) (emphasis omitted) (citing *Heintz*, 514 U.S. at 292 (citing 15 U.S.C. §§ 1692d, 1692e(2)(A), 1692f)).

To briefly summarize where the Court comes out as to the claims asserted against the individual Defendants, they will be dismissed for a failure to allege facts that make a showing that Mr. Shaw is entitled to relief, either because the allegations are legal conclusions which may not be properly considered when assessing a complaint, or because the allegations as stated in Mr. Shaw's Complaint fail to plausibly allege personal conduct or responsibility on behalf of any of the individual Defendants from which the Court can discern any individual culpability. The dismissals as to the individual Defendants will be with prejudice because the pleading flaws cannot be cured by amendment. As noted below, the Plaintiff will be afforded a very limited opportunity to file an amended complaint as to certain specific alleged claims as against HHL.

1.  **Individual Defendants Robert L. Baroska, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick**

The allegations against individual Defendants Robert L. Baroska, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick, as sprinkled throughout the Complaint but most predominantly stated on pages six (6) through ten (10), are wholly conclusory in nature. (ECF No. 1-2.) Even liberally construing the Complaint and drawing all reasonable inferences from it, the allegations do not facially show that the individually named attorneys used "violence, obscenity, or repeated annoying phone calls," nor does the Complaint include any allegations that the individual Defendants "falsely represent[ed] the character, amount or legal status of a debt, or use[d] unfair or unconscionable means to attempt to collect a consumer debt." *Strader*, 2018 WL 741425, at *12.

All that Mr. Shaw alleges to support his FDCPA claims against the individual Defendants listed here come in the form of general conclusory assertions—stating the individual Defendants aided in the preparation of litigation or in the filing of lawsuits "against alleged debtor without any evidence at all[.]" (ECF No. 1-2, at 6–10 ¶¶ 8, 9, 10, 11, 12). These allegations are conclusory assertations, and even at their best, they do not plausibly assert that the individual Defendants are personally responsible for conduct that is violative of the FDCPA, nor do these allegations specifically identify which Defendant engaged in what set of unlawful behavior(s). Finally, Mr. Shaw bases his claims against these individual Defendants on a conclusory assertion that because he "considered the complaints [*i.e.*, the lawsuits filed in Pennsylvania state court] as threatening[,] abusive[,] and harassing without any supporting evidence," the complaints violated the FDCPA. (*Id.* at 13, ¶ 13.)

Without offering any specific assertions of legally culpable conduct by any of the individually named Defendants, Mr. Shaw's statement again fails to plausibly allege any right to

relief under the FDCPA.[6] Further, Mr. Shaw's legal theories as outlined above simply do not hold water. In addition to being deficiently pled, Mr. Shaw's argument that the preparation or filing of legal pleadings "without any evidence at all" constitutes harassing or abusive behavior as contemplated by the FDCPA fails to state a claim as a matter of law. In general, "[f]iling . . . a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (holding that such a claim must fail as a matter of law). Moreover, Defendants attached as Exhibits to their Motion to Dismiss the two (2) civil complaints filed against Mr. Shaw in Mercer County. Each such complaint states, in part, that: "Defendant opened a credit account, as set forth in the Confidential Document Form being submitted for filing contemporaneously with this Complaint," which would indicate that these lawsuits were in actuality filed with "immediate means of proving the debt." (ECF Nos. 12-1 and 12-2.) Because the Court concludes that no iteration of the facts alleged against these named Defendants surrounding these state court lawsuits could state a cognizable such claim against these individuals under the FCDPA based on these two (2) state court filings—filings that do not reveal the involvement of these Defendants—amendment of the Complaint as to these individuals would be futile. The Court therefore dismisses with prejudice Mr. Shaw's claims against the individually named Defendants Robert L. Baroska, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick.

---

[6] In this portion of the Complaint (ECF No. 1-2, at 6–10), Mr. Shaw cites to several cases as support for his argument that the (1) the FDCPA applies to the individual Defendants and (2) that the individual Defendants violated the FDCPA. The Court concludes that each of these cases present legal issues and facts that are distinguishable from the present action because they involve situations fundamentally unlike those present here, and in any event are nonbinding precedent. *See Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031 (W.D. Wis. 2002) (An FDCPA case in which the only defendant was a collection agency and no employees—or attorneys—of the collection agency were part of the action); *Ransom v. Telecredit Serv. Corp*, No. 91-00897, 1992 U.S. Dist. LEXIS 22738, at *1 (D. Md. Feb. 5, 1992) (same); and *Peters v. A.T.&T. Corp.*, 43 F. Supp. 2d 926 (N.D. Ill. 1999) (same).

## 2.   **Individual Defendants Martin Rubin and Bryan J. Polas**

In contrast to the allegations against Robert L. Baroska, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick, the allegations against Martin Rubin and Bryan J. Polas are slightly more specific, which leads the Court to address them separately. In his Complaint, Mr. Shaw contends that Mr. Rubin is the "real owner and controller" of HHL and thereby "directly controls, orders, guide[s], [and] supervise[s] . . . the violations being perpetrated upon [Mr. Shaw.]" (*Id.* at 4.) Moreover, Mr. Shaw asserts that Mr. Rubin violated the FDCPA by failing to "ascertain [Mr. Shaw's correct address] for the purpose of filing the complaints and [providing service of process.]" (*Id.* at 16.) As for Bryan J. Polas, Mr. Shaw alleges that Mr. Polas is liable, specifically under § 1692e(3), for "filing two identical lawsuit[s]," and that by filing these "identical lawsuits," Mr. Polas's actions constituted lack of proper attorney review in violation of the FDCPA. (*Id.* at 6.)

As noted above, Defendants attached as Exhibits the two (2) civil complaints filed in the Magisterial District Court in Mercer County, which ascertain the debt-collection actions filed against Mr. Shaw on behalf of Capital One Bank. (ECF Nos. 12-1 and 12-2.) The complaints are both signed by Bryan J. Polas as counsel for Capital One Bank.[7] (ECF Nos 12-1 and 12-2.) Finally, although Mr. Shaw alleges these lawsuits seek to collect identical debts, the Exhibits facially demonstrate that two (2) distinct debts existed, and the lawsuits were not "identical" as Mr. Shaw avers in his Complaint. That averment is facially implausible.

In opposition, Defendants, without specifically referencing Martin Rubin or Bryan J. Polas, argue that (1) Mr. Shaw's pleading is insufficient to adequately put any of the individually named

---

[7] The Court may properly consider these Exhibits in resolving this Motion. *See Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 683 (W.D. Pa. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (The court, on a motion to dismiss, may consider "undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents")).

Defendants on notice of the exact claims against them and (2) that Third Circuit case law "is clear that employees of an alleged debt collector may only be individually liable under the FDCPA if they themselves are determined to be debt collectors (*i.e.*, they exercise control over the affairs of the employer debt collector's business)." (ECF No. 12.) As such, Defendants argue that Mr. Shaw has failed to allege that any of the individually named attorneys exercise or exercised control over the affairs of the employer debt collector's business.[8] (*Id.*)

First, the Court addresses Defendants' argument that because Mr. Shaw has failed to allege that any of the individually named attorneys exercised control over HHL's debt-collection affairs, that all claims as to these named Defendants must be dismissed. (ECF No. 12.) It strikes the Court that there can be a legally significant distinction—at least for purposes of the FDCPA—between an everyday employee of a debt collection agency and an attorney, employed by a law firm collecting on behalf of a creditor and who is regularly engaged in collecting a consumer debt through litigation. Here, regardless of the individual Defendants' status as HHL's employees or otherwise, by way of their being alleged to have been acting as attorneys collecting on a consumer debt, which Defendants could not dispute at this procedural stage, Supreme Court precedent guides the Court to conclude that these types of defendants can conceivably be held individually liable for FDCPA violations. *See Heintz v. Jenkins*, 514 U.S. 291 (1995).

Case law from within our Circuit further aids this Court in illustrating that distinction: In *Yentin v. Michaels, Louis & Associates, Inc.*, the U.S. District Court for the Eastern District of

---

[8] Specifically, Defendants argue that Mr. Shaw "has failed to plead that Defendants Robert L. Baroska, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick exercised control over the debt-collecting affairs of [HHL]." As the Court explains in more detail below, the Court agrees that the Complaint fails to plead as much, but the Court also notes that such a conclusion is not necessary for its purposes here in determining whether a plaintiff has sufficiently alleged that a specific attorney regularly engaged in collecting a consumer debt through litigation could have violated the FDCPA.

Pennsylvania analyzed whether an employee and owner of a debt-collection agency could be held liable under the FDCPA, and in doing so, assessed the exact cases Defendants cite as support for their argument that the FDCPA does not extend to the individual Defendants here. The court in *Yentin* summarized the relevant rule as follows: "it appears unlikely that an employee may be held liable as a debt collector under the FDCPA merely for playing an active role in debt collection activities. . . . But . . . an entity or individual who exercises control over the activities of a debt-collecting business may be liable under the Act." *Yentin v. Michaels, Louis & Assocs., Inc.*, No. 11-0088, 2011 WL 4104675, at *6 (E.D. Pa. Sept. 15, 2011) (discussing and synthesizing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000); *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057 (7th Cir. 2000); and *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994)).[9]

In *Yentin*, there were two (2) defendants: one was an individually named defendant who served as the owner of the second defendant, a debt collection company. As to the individual defendant, the narrow issue was whether the owner could be held personally liable for the debt collection company's actions. In assessing personal liability, the court did not indicate whether the defendant was an attorney and if so, how that would impact the court's analysis. *Yentin*, 2011 WL 4104675, at *3, *4. Rather, the court emphasized the individual defendant's status as the "Owner" of the debt collection agency at issue, an observation important to the Court's analysis here: the degree to which an employee's role in debt-collection activity is distinct from the consequences of an attorney working for a law firm that is regularly engaged in collecting consumer debts.

---

[9] Mr. Shaw also points to *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) to support his argument that Mr. Rubin exercised control over HHL and the other named individual Defendants. (ECF No. 1-2, at 6–10.)

Thus, given that the FDCPA's provisions extend to attorneys regularly engaged in collecting consumer debts, the Court concludes that Defendants' argument that Mr. Shaw fails to allege that any of the Defendants exercised control over HHL does not resolve the Court's analysis. Based on the Court's assessment of the current state of the law, such an argument would only support the Defendants' position if a plaintiff were advancing an alternative theory of recovery had the Court concluded that these individually named Defendants were not attorneys in the context that *Heintz* presented, or if the Court concluded that the attorneys did not engage in harassing or deceptive behavior but rather that HHL, while under control of one of the individual Defendants, did.[10]

This means that the Court must next consider the allegations as set forth against Mr. Polas and Mr. Rubin. Both individual Defendants are listed as attorneys in the Complaint, the relevant briefing, and the Exhibits. Mr. Shaw's allegations, as exemplified to a degree by Defendants' proffered Exhibits, are more specific than his blanket assertions as to the other individual Defendants, but they still fail to sufficiently allege facts that show Mr. Shaw is entitled to recover under the FDCPA.

### a.  Individual Defendant Bryan J. Polas

First, as to Mr. Polas, the inclusion of his name as the "Plaintiff's Attorney" in the formal civil complaints filed in Mercer County do not themselves generate cognizable claims under the FDCPA, to the extent Mr. Shaw seeks any sort of relief pursuant to § 1692e(11), as that type of action falls within the FDCPA's limited protective carve-out for the preparation of legal pleadings.

---

[10] Here, simply by naming Mr. Rubin as the individual who exercises control over HHL and its debt-collection business, Mr. Shaw's allegations are not enough to facially show that Mr. Shaw has a right to recover from Mr. Rubin under the FDCPA because as the Court concludes below, Mr. Shaw's allegations against HHL fail to plausibly state a claim. As such, HHL's alleged culpability would serve as insufficient grounds to extend individual liability to Mr. Rubin for HHL's actions. *See Yentin*, 2011 WL 4104675, at *6 (holding that to "support liability against" the individually named defendant would only be possible if the allegations against the debt collection agency, which the individual defendant owned, proved to be sufficient).

*See* § 1692e(11) ("[T]his paragraph shall not apply to a formal pleading made in connection with a legal action."). Second, the Exhibits facially demonstrate that Mr. Polas is, in fact, an attorney and is not engaged in the "false representation or implication that [he] is an attorney or that any communication is from an attorney," as prohibited by § 1692e(3). Those allegations therefore fail as a matter of law and cannot be repaired by amendment.

Looking to Mr. Shaw's allegation that Mr. Polas failed to engage in sufficient attorney review before filing the two (2) state court civil complaints—based on the contention that the debts alleged are actually "identical"—the Court concludes that those allegations are wholly conclusory and will be dismissed. While Mr. Shaw's assertion that two (2) distinct debts do not exist fails because the face of the two (2) state court complaints demonstrates that they did, whether Mr. Shaw can otherwise assert a claim based on allegedly inadequate attorney review prior to the filing of the civil lawsuits warrants a closer examination, especially in light of Mr. Shaw's *pro se* status.

"Adequate attorney review" is an FDCPA requirement that the Third Circuit has extended to debt-collection letters when, from the perspective of the least sophisticated debtor, those letters purport to be drafted by an attorney or reflect an attorney's involvement. *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 998–1002 (3d Cir. 2011).Whether this requirement also extends to the filing of a civil complaint is an issue that has been taken up by several lower courts in this Circuit and in others. *See Bock v. Pressler and Pressler, LLP*, 30 F. Supp. 3d 283, 300–03 (D.N.J. 2014) (extending the Third Circuit's holding in *Lesher* to civil complaints and concluding that an attorney must sufficiently review a debtor's file before filing a civil complaint to comply with the FDCPA); *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 100–02 (E.D.N.Y. 2009) (concluding the same); *Richardson v. Midland Funding, LLC*, No. 13-01356, 2013 WL 6719110, at *8 (D. Md. Dec. 18, 2013) ("A collection complaint can be misleading, in violation

14

of the FDCPA, where it is filed with without an attorney's sufficient review of the legal basis for the claim[.]").

In *Bock*, the court established a "case-by-case" analysis to be applied to determine whether meaningful attorney review, in accord with the FDCPA, occurred prior to the filing of a civil action. The court there concluded that an attorney adequately reviewed a debtor's file in relation to a civil complaint when: "the attorney *signing* [the complaint] has . . . 1) drafted, or carefully reviewed, the complaint; and 2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law." *Bock*, 30 F. Supp. 3d at 304 (emphasis added). If a court were to conclude that "the attorney who signed the complaint is not involved and familiar with the case against the debtor, then the debtor has been unfairly misled and deceived within the meaning of the FDCPA, 15 U.S.C. § 1692e." *Id.* at 303. Here, the Court concludes that Mr. Shaw has offered a single conclusory allegation as to the circumstances of Mr. Polas's attorney review, exclusively relying on the inaccurate assertion that Mr. Shaw's debts are identical contrary to what is reflected in two (2) facially distinct lawsuits. As such, the Court concludes that Mr. Shaw has not facially "shown" that (1) Mr. Polas did not carefully review the civil complaints and (2) that Mr. Polas did not conduct a reasonable inquiry in good faith. *Id*. Because the only alleged facts on which Mr. Shaw relies to make this claim is that these state collection actions are "identical," and because the Defendants' Exhibits facially show that is not the case, the Court concludes that amendment of this claim would be futile.

### b.  <u>Individual Defendant Martin Rubin</u>

Likewise, as to Mr. Rubin, Mr. Shaw fails to state a cognizable claim under the FDCPA by alleging that Mr. Rubin failed to ascertain his address for service of process. *See Dillon v. Riffel-*

*Kuhlmann*, 574 F. Supp. 2d 1221, 1123 (D. Kan. Aug. 29, 2008) ("Failure to comply with service of process . . . does not 'provide[ ] a legal basis to sustain a claim that the FDCPA has been violated." (quoting *Pierce v. Steven T. Rosso, P.A.*, No. 01-00124, 2001 WL 34624006, at *2 (D. Minn. Dec. 21, 2001))). The Court notes that Mr. Shaw's address, as averred by Mr. Shaw in the Complaint he filed against Defendants in this Court, is the same address that Defendants used when filing the civil complaints against Mr. Shaw in Mercer County. Here, Mr. Shaw alleges as a fact that his address is "53 Canal Street, Greenville, [PA]." (*Compare* ECF No. 1-2, at 2, *with* ECF Nos. 12-1 and 12-2.) That is the same address as was used in the state court complaints. (*Id.*) This facially demonstrates that Mr. Shaw's address was in actuality accurately ascertained, eliminating his claims that are grounded in Mr. Rubin's, or any of the Defendant's, alleged failure to ascertain Mr. Shaw's address. Such claims will thus be dismissed with prejudice.

Mr. Shaw's additional conclusory allegations that (1) Mr. Rubin failed to adequately review information prior to filing debt collection cases in state court and (2) that he relied on fraudulent information in filing said complaints are without merit as a matter of law. (*Id.* at 19, 22, 25–26.) The Court first observes that Mr. Rubin's signature appears nowhere on either civil complaint. (ECF Nos. 12-1 and 12-2.) Second, to the extent Mr. Shaw alleges that Mr. Rubin's conduct surrounding the filing of the lawsuit is a form of harassment as defined by § 1692d, the Court concludes that the filing of these civil lawsuits cannot alone state an FDCPA harassment claim. *Harvey*, 453 F.3d at 330 ("Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor."). Here, the legal filings to which Mr. Shaw refers not only describe the debts owed, but the pleadings also

reference proofs of debt, revealing that the "immediate means" of proving the debt facially existed in both collection actions. *Id*.

Next, to the extent Mr. Shaw argues that Mr. Rubin engaged in a deceptive act in violation of § 1692e of the FDCPA by relying on fraudulent information in filing the actions, this argument is also unsupported by case law. *See Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d 618, 621 (E.D. Pa. 2017) (holding that where a state collection action is ongoing, "it would have been obvious to even the least sophisticated debtor" receiving the letters that these letters were sent on behalf of debt collector in an attempt to collect a debt, and thus, no deceptive action claim existed as a matter of law). Finally, Mr. Shaw's argument that Mr. Rubin's failure to adequately review the lawsuit prior to the filing of the civil complaints constituted an FDCPA violation fails as matter of law because Mr. Rubin is not the attorney who signed the civil complaint. *See Bock*, 30 F. Supp. 3d at 30; (ECF Nos. 12-1 and 12-2.)

Without a legally sufficient factual basis regarding the specific nature or timeline of Mr. Shaw's allegations, the Court concludes that Mr. Shaw has not facially "shown" that he is entitled to relief from the individual Defendants named in this portion of his Complaint. Moreover, the legal theories Mr. Shaw asserts to advance his FDCPA claims fail as a matter of law. Accordingly, all claims as to Mr. Polas and Mr. Rubin will be dismissed with prejudice, as any attempt at amendment would be futile.[11]

---

[11] In *Richardson*, 2013 WL 6719110, at *8, the district court treated allegations of inadequate attorney review raised against both the individual attorney who signed the civil complaint and the attorney's law firm as one in the same. The Court therefore treats Mr. Polas's signature on the civil complaints in his capacity as an attorney employed by HHL as an allegation that HHL also engaged in the same allegedly violative conduct, which the Court resolves below.

B. <u>**Allegations Pertaining to HHL**</u>

The Court will next address Mr. Shaw's allegations against HHL, which appear to pertain to the following two (2) events: (1) HHL's correspondence with Mr. Shaw, which—as supplemented by Defendants' Exhibit (ECF No. 12-3)—the Court understands to be two (2) letters seeking to resolve lawsuits against Mr. Shaw; and (2) HHL's filing of debt-collection lawsuits in the Magisterial District Court of Mercer County. Accepting Mr. Shaw's factual allegations as true and liberally drawing all reasonable inferences in his favor, the Court concludes that no plausible reading of the Complaint would entitle Mr. Shaw to relief under the FDCPA.

1. <u>**Allegations Grounded in the "Offers to Resolve Lawsuit" Letters**</u>

The Court concludes that Mr. Shaw's Complaint fails to plausibly allege that HHL violated the FDCPA by way of sending to Mr. Shaw an allegedly "very demanding extortion letter." As an Exhibit to their Motion, Defendants attach two (2) letters, titled "Offers to Resolve Lawsuit," which align with Mr. Shaw's descriptions of the correspondence on which he relies to argue that HHL violated several provisions of the FDCPA. The Third Circuit permits district courts to consider "undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents." *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 683 (W.D. Pa. 2013) (quoting *Mayer v. Belichick*, *605* F.3d 223, 230 (3d Cir. 2010)). Here, the Court concludes that the letters are "undisputedly authentic documents," and further, that Mr. Shaw bases his claims against HHL at least in part on these letters. As such, the Court must consider the two (2) "Offers to Resolve Lawsuit" letters HHL sent to Mr. Shaw in resolving this Motion. (ECF No. 12-3.)

As support for his argument that HHL's letters violate the FDCPA, Mr. Shaw alleges the following: that HHL violated § 1692e(4) and (10) by sending a "very demanding extortion letter . . . stating that if [Mr. Shaw] did not execute the OFFERS TO RESOLVE LAWSUIT in plan

number 1[] [or] plan number 2," Mr. Shaw would have to litigate the debts in court. (ECF No. 1-2, at 13 ¶ 19.) Also based on these letters, Mr. Shaw contends that HHL violated § 1692f(1) and d(1) by threatening to proceed with litigation if Mr. Shaw did not agree to pay his debts, without allegedly "ever producing [a] shred of real evidence." (*Id*. at 19 ¶¶ 35, 36.) Finally, Mr. Shaw asserts that because HHL never ascertained the cardholder agreement or verified his address prior to sending the letter, the letter constitutes harassment in violation of FDCPA § 1692d. (*Id*.)

In response, Defendants assert that Mr. Shaw's argument that the letters violate § 1692e(4), "which prohibits a debt collector from falsely representing that the nonpayment of a debt would result in his arrest," cannot stand because the letters "fail to state anything of the sort." (ECF No. 12.) Second, Defendants argue that the letters do not violate § 1692e(10)—which protects against false, deceptive, or misleading representation in connection with the collection of a debt—because the letters offer flexible resolution of the debts, and secondarily, because Mr. Shaw "does not provide any factual support as to whether and how the letter is deceptive or misleading." (*Id*.)

## 2.  <u>Least Sophisticated Debtor Standard</u>

The FDCPA is remedial in nature, and "so as to effect its purpose," the language should be broadly construed. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citing *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002); *Stroh v. Director, OWCP*, 810 F.2d 61, 63 (3d Cir. 1987)). In assessing whether certain communications between debt collectors and consumers violate the FDCPA, a court applies the "least sophisticated debtor standard," s*ee id.*, which requires a court to assess more than "whether particular language would deceive or mislead a reasonable debtor because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Id.* (internal quotation marks omitted) (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)).

Although this is a lower standard than a reasonable debtor's interpretation of a debt collector's statement, the least sophisticated debtor standard still "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson*, 225 F.3d at 354–55 (citation omitted). Accordingly, in assessing whether a debt collector has violated § 1692e, a court considers whether "a debt collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015) (emphasis in original). Specifically, a letter or communication may be considered deceptive where "it can be reasonably read to have two or more different meanings, one of which is inaccurate," *Brown*, 464 F.3d at 453, or where the misleading statement is material in that "it is capable of influencing the decision of the least sophisticated debtor." *Jensen*, 791 F.3d at 422. The Third Circuit has stated broadly that "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." *See Brown*, 464 F.3d at 453. However, whether the least sophisticated debtor standard applies specifically to claims brought pursuant to § 1692d is up for debate from the perspective of some lower courts in this Circuit.[12] Likewise, our Court of Appeals has not explicitly addressed whether the least sophisticated debtor standard applies to § 1692f claims, although other Circuits have applied it, *see Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996), and the Third

---

[12] One lower court in this Circuit noted that "[b]ecause § 1692d does not require any communication, as defined under the FDCPA, application of [the least sophisticated debtor] standard to § 1692d seems unlikely, and indeed unworkable." *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 431 n.21 (D.N.J. 2013). *But see Allen v. LaSalle Bank, N.A.*, No. 08-02240, 2009 WL 10676632, at *4 n.6 (D.N. J. Jan. 30, 2009), *vacated and remanded on other grounds by Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) (interpreting case law differently and concluding that the least sophisticated debtor standard does apply to § 1692d claims as well as § 1692f claims). The Court concludes that the claims Mr. Shaw makes pursuant to § 1692d and f are without merit as a matter of law regardless of the least sophisticated debtor standard's applicability and therefore does not decide that issue here.

Circuit's broad assertion of the least sophisticated debtor's applicability in *Brown* still stands. Whether the least sophisticated debtor standard expressly applies to Mr. Shaw's §§ 1692d and f claims is inconsequential, as the Court concludes that the legal theories he advances to make these claims, when viewed through this lower-powered *pro se* lens of interpretation, are not cognizable as a matter of law.

> **3.** **Applying the Least Sophisticated Debtor Standard to the "Offer to Resolve Lawsuit" Letters**

> **a.** **§ 1692e "False or Misleading Representation" Claims**

The Court first considers Mr. Shaw's claim that the letters facially violate § 1692e(4) of the FDCPA. Even liberally construing the Complaint in the context of the statute's language, Mr. Shaw has not alleged any facts to suggest that the letters violate this section. Section 1692e(4) provides that a debt collector may not present or implicate "that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." Here, the Court agrees with Defendants that the letters do not "state anything of the sort." (ECF No. 12.)

There are no statements or implications in the letters that if Mr. Shaw failed to pay up on certain debts accrued with his alleged Capital One Bank Accounts, that he would be arrested, imprisoned, or have his property seized/wages garnished. Further none of the statements in these letters would be capable of more than one (1) reading, so the letters are neither deceptive nor misleading in violation of § 1692e(10). *See Jensen*, 791 F.3d at 420; *Brown*, 464 F.3d at 453. Moreover, because the state collection actions in Mercer County were ongoing, "it would have been obvious to even the least sophisticated debtor" receiving the letters that these letters were

sent on behalf of Capital One by HHL in an attempt to collect a debt. *Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d 618, 621 (E.D. Pa. 2017) (citing *Simon v. FIA Card Servs. Na.*, 639 F. App'x 885, 888 (3d Cir. 2016) and *Rhodes v. U.S. Bank Nat'l Ass'n*, 238 F. Supp. 3d 648, 651–52 (E.D. Pa. 2017)). Those letters cannot support the claims asserted on these bases as a matter of law; they cannot be repaired by amendment; and those claims will be dismissed with prejudice.

### b.  § 1692f "Unfair Practices" Claims

As for Mr. Shaw's allegations that the letters violate § 1692f(1)—a catch-all provision of the FDCPA that prohibits the use of unconscionable means to collect a debt—the Court concludes that Mr. Shaw fails to plead facts sufficient to state a plausible claim under f(1) and any other parts of this section. Rather, all that Mr. Shaw offers are conclusory statements that HHL threatened to proceed with litigation if he did not pay, but Mr. Shaw makes these allegations without pointing to any specific communications or actions on behalf of HHL, aside from the letters, that would permit this Court to discern a plausible FDCPA violation under the least sophisticated debtor standard. Here, the correspondence included flexible payment options as an offer to resolve the pending lawsuits, and to accept Mr. Shaw's interpretation of these letters as unconscionable, harassing, or abusive would be permitting a "bizarre or idiosyncratic interpretation" of the letters, which would further be unsupported by the least sophisticated debtor standard or any other interpretive standard. (ECF No. 12-3.)

Moreover, where a plaintiff asserts that a defendant "is liable under § 1692f for the same conduct" that the plaintiff alleges violated other provisions of the FDCPA, their § 1692f claims should be dismissed in full. *Sullivan v. Allied Interstate*, LLC, No. 16-00203, 2016 WL 7187507, at *7 n.12 (W.D. Pa. Oct. 16, 2018). Here, even construing the Complaint liberally and making the

close calls in Mr. Shaw's favor, the Court is unable to distinguish between conduct that Mr. Shaw alleges goes to his § 1692f claims versus HHL's conduct that Mr. Shaw alleges violated other FDCPA provisions. Accordingly, these claims, too, fail as a matter of law. They cannot be repaired by amendment and will be dismissed with prejudice.

### c. § 1692d "Harassment or Abuse" and Adequate Attorney Review Pursuant to § 1692e

Finally, Mr. Shaw's allegations that HHL engaged in harassing debt-collection behavior, which the Court interprets to be an alleged violation of § 1692d, by HHL's alleged failure to ascertain the cardholder agreement or verify Mr. Shaw's address prior to sending the letters are not cognizable claims under § 1692d. As a matter of law, these allegations do not state a claim under any provision listed in § 1692d and are more appropriately analyzed as an adequacy of attorney review challenge pursuant to § 1692e. *See Lesher*, 650 F.3d at 998–1002 (standing for the proposition that inadequate attorney review prior to sending a debt-collection communication purporting to involve an attorney can constitute a deceptive debt-collection practice if the least sophisticated debtor would be led to believe an attorney was meaningfully involved).

Generally, these types of claims are based on the following factual scenario: a law firm sends a collection letter on firm letterhead to a debtor, prior to any legal action being taken, which "rais[es] the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its *legal capacity* when it sent the letters." *Id*. at 1003 (emphasis added). The key word in this scenario is "legal capacity." *Id*. The Court concludes that when HHL sent Mr. Shaw the "Offers to Resolve Lawsuits" letters, it was necessarily acting in its legal capacity for the following reasons: HHL states clearly in its letters that it is serving in a representational capacity of Capital One and further references the unique civil complaint numbers for each of the

alleged debts owed by Mr. Shaw. (ECF No. 12-3.) Accordingly, Mr. Shaw fails to state a claim under § 1692e's general prohibition against "false, deceptive, or misleading" communications as a matter of law, and any claims pursuant to this provision will be dismissed with prejudice, as they cannot be repaired by amendment.

Next, Mr. Shaw's assertions that HHL failed to verify Mr. Shaw's address before sending the letters similarly cannot stand as a matter of law and will be dismissed with prejudice. Not only do these allegations fail to constitute harassing behavior as a matter of law under § 1692d, but also, based on the pleadings before the Court, Mr. Shaw alleges his address to be 53 Canal Street, Greenville, Pennsylvania, which is the exact address Defendants used in filing the state court collection actions. Thus, Mr. Shaw's claims based on these allegations fail as a matter of law.

Mr. Shaw offers no factual allegations that would lead this Court to conclude, even plausibly, that the letters are harassing, misleading, or deceptive. Because it strikes the Court that no further amendment would establish that Mr. Shaw has a viable FDCPA claim under these facts given that the letters are in the record and before the Court, his claims pursuant to §§ 1692e, 1692d, and 1692f, to the extent they are based on the "Offers to Resolve Lawsuits" letters, are dismissed with prejudice.

### 4.  Allegations Grounded in the Two (2) State Debt-Collection Actions

Many of the allegations that Mr. Shaw made regarding the "Offers to Resolve Lawsuit" letters are similar or identical to the allegations Mr. Shaw makes against HHL in regard to the two (2) state court collection actions filed against him. Mr. Shaw alleges that HHL never produced any proof that the alleged debts were actually in existence and thus violated the following FDCPA sections: §§ 1692(d)(1), e(2)(A), e(3), e(4), e(5), e(8), e(10), and f(1). (ECF No. 1-2, 15–16, ¶ 28.) Further, Mr. Shaw contends that HHL violated §§ 1692 (d), e(1)–(5), (8), (10), and (f)(1) by

24

"improperly identifying the specific creditor as Capital One Bank"; "by stating [the] credit card was issued to Plaintiff but never show[ing] how the alleged card was applied for, how it was accepted, or how the alleged cards were mailed to Shaw," (*Id*. at 26, ¶¶ 71; 18, ¶¶ 38, 41); and by never sending "account statements" or producing "chain of command" to prove that [Mr. Shaw] was the holder of said account[.]" (*Id*. at 27, ¶¶ 74, 78.) Finally, Mr. Shaw avers that HHL ignored Mr. Shaw's answers to the state lawsuits, and thus argues that failure to do so was a violation of §§ 1692d(1); e(2)(A); e(10); and (f)(1). (*Id*. at 22 ¶ 61.)

In turn, Defendants argue that "[n]owhere in Plaintiff's Complaint is there any factual support for his allegations that Defendants violated any of the above sections of the FDCPA," and without any factual support, "the conclusory allegations . . . do not constitute violations of the FDCPA[.]" (ECF No. 12.) The Court agrees that Mr. Shaw's allegations do not meet the mark in pleading FDCPA violations, nor do they state a claim as a matter of law.

Here, the Court treats Mr. Shaw's smorgasbord of allegations regarding the state lawsuits as centering around the following issues: his somewhat vague allegation that by filing the state court actions to collect allegedly unascertained debts, (1) HHL harassed Mr. Shaw within the meaning of FDCPA § 1692d; (2) misled and deceived Mr. Shaw within the meaning of § 1692e; and (3) engaged in unfair debt-collection practices as prohibited by the FDCPA's catchall provision: § 1692f. Specifically, Mr. Shaw relies on his repetitive allegations that HHL failed to verify a debt or respond to Mr. Shaw's "answers," which the Court reasonably infers to relate to the Mercer County lawsuits HHL filed against Mr. Shaw. (ECF Nos. 12-1 and 12-2.)

### a.   § 1692e Claims

The Court, again, treats Mr. Shaw's claims here as attempting to allege that HHL engaged in inadequate attorney review prior to filing a civil lawsuit. *See Bock*, 30 F. Supp. 3d at 304. First,

just as the Court concluded that Mr. Shaw's § 1692e claims against individual Defendant Mr. Polas on these grounds will be dismissed for failure to facially show that Mr. Shaw is entitled to relief, the Court concludes the same as to HHL. Mr. Shaw has alleged only that HHL failed to prove the existence of a debt. On these allegations, Mr. Shaw has not facially shown that (1) HHL did not carefully review the civil complaints and (2) that HHL did not conduct a reasonable inquiry in good faith, nor could such be inferred. *Id.* To the extent that Mr. Shaw alleges that HHL engaged in inadequate attorney review of his debt prior to filing the lawsuit, his claims will be dismissed with prejudice because amendment would be futile. No amendment of the alleged facts that make up Mr. Shaw's adequacy of attorney review claim could create grounds for the Court to facially conclude that HHL violated a provision of the FDCPA. The Court is not duty bound to permit amendment for claims not even alluded to, as opposed to those advanced, but incompletely so.

Outside of the context of alleged inadequate attorney review, to the extent that Mr. Shaw argues that these state collection lawsuits violate other relevant provisions § 1692e, case law guides this Court to dismiss his claims with prejudice. Holdings by lower courts within our Circuit support a conclusion that where it would have been apparent to the least sophisticated debtor that the filing of a civil complaint alleging the existence of a debt owed constitutes an attempt to collect a debt, then the debt collector has not engaged in a deceptive practice within the meaning of § 1692e. *Parker v. Pressler & Pressler LLP*, 650 F. Supp. 2d 326, 342 (D.N.J. 2009) (holding that a plaintiff's FDCPA claims centering around a civil court complaint and later default judgment in that action failed to state a claim as a matter of law under § 1692e because the debt collector, by way of filing the complaint, had to allege that the debt was actually owed by the consumer, which satisfied § 1692e); *Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d 618, 621 (E.D. Pa. 2017) (citing *Simon v. FIA Card Servs. Na.*, 639 F. App'x 885, 888 (3d Cir. 2016) and *Rhodes*

*v. U.S. Bank Nat'l Ass'n*, 238 F. Supp. 3d 648, 651–52 (E.D. Pa. 2017)) (concluding that after the filing of a lawsuit against the debtor, "it would have been obvious to even the least sophisticated debtor receiving the notices regarding the sheriff's sale that the attorneys . . . represented entities seeking to collect a debt"). In that vein, to the extent that Mr. Shaw contends that HHL engaged in deceptive FDCPA practices by way of falsely attributing a debt to Mr. Shaw in the Mercer County civil complaints, the Court will dismiss his claims with prejudice, as his claims fail as a matter of law, and cannot be resurrected by further amendment.

### b. § 1692d and § 1692f Claims

Looking next to Mr. Shaw's allegations that HHL's failure to produce documents or other evidence of Mr. Shaw's account statements, chain of custody, or regarding Capital One's status as the creditor, the Court concludes that Mr. Shaw does not state a claim under § 1692d. This section protects debtors from abusive or harassing debt-collection behavior on behalf of debt collectors. "Mere failure to provide documents, in itself, does not constitute harassment or abusive conduct[.]" *Jones v. Inv. Retriever, LLC*, No. 10-01714, 2011 WL 1565851, at *6 (M.D. Pa. Apr. 25, 2011) (citing § 1692d). Moreover, other Circuits have held that "even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Harvey*, 453 F.3d at 330 (holding that such a claim must fail as a matter of law). As to the balance of his assertions, Mr. Shaw fails to state a claim as a matter of law under § 1692d because all that his Complaint has alleged as support for these claims are bald assertions that HHL failed to present documentation of account statements, chain of custody, or Capital One's legal status, none of which constitutes harassment or abusive conduct as a matter of law. Finally, because Mr. Shaw relies on the same conduct to assert § 1692f claims as he does his claims under

§§ 1692d and e, the Court dismisses his § 1692f claims as a matter of law. *Sullivan*, 2016 WL 7187507, at *7 n.12. Accordingly, the Court concludes that Mr. Shaw has failed to state a claim under the FDCPA as a matter of law, and his claims pursuant to §§ 1692d and f will be dismissed in full with prejudice because any further amendment will not rescue Mr. Shaw's attempts to allege legally cognizable FDCPA claims.

### 5. <u>Remaining Allegations Against HHL</u>

From the Court's perspective, the remaining allegations raised by Mr. Shaw against HHL are not clearly tethered to either of the two (2) main events that the Court used to organize its assessment of each of Mr. Shaw's claims. Accordingly, the Court addresses the remaining allegations in turn.

First, Mr. Shaw alleges that HHL communicated or threatened to communicate to others credit information (of Mr. Shaw's) which is known or which should be known to be false and therefore violating § 1692(e)(8), which the Court treats as an effort to assert claims under §§ 1692c and b. (ECF No. 1-2, at 21 ¶ 49.) Second, Mr. Shaw alleges HHL failed to ascertain Mr. Shaw's correct address for the purpose of filing complaints and proper service thereof. (*Id*. at 16.) Finally, Mr. Shaw alleges that "stalling the filing of said complaint for over three months" also violates the FDCPA. (*Id*. at 25, ¶ 69.)

As for these remaining allegations against HHL, this Court's decision in *Strader* provides guidance. *Strader v. U.S. Bank Nat'l Ass'n*, 2018 WL 741425, at *1. In *Strader*, the plaintiff alleged that the defendants violated § 1692c and § 1692b "when they communicated information about the debt with third parties." *Id*. at *15. This Court concluded, however, that the Complaint had "insufficient facts to support [a claim under these provisions], which govern[] communications of a debt with third parties]" because it was "unclear from the face of the [c]omplaint what the communications were and when they occurred." *Id*. Without sufficient allegations in that vein, the

Court noted that the defendants could not "possibly understand the nature of the claims." *Id*. Here, while Mr. Shaw alleges that HHL "communicated or threatened to communicat[e] to any person credit information (of [Mr. Shaw]," the Complaint fails to name any third party or provide any indication of the substance of what was communicated or how and when. Thus, Mr. Shaw's Complaint as to these alleged violations under the FDCPA fails to state a claim upon which relief can be granted, but as to this narrow allegation, the dismissal will be without prejudice and with leave to amend to flesh out a nonconclusive, plausible claim.

Next, considering Mr. Shaw's allegation that HHL failed to ascertain Mr. Shaw's correct address for the purpose of filing complaints and proper service of them (*Id*. at 16 ¶ 290), by allegedly failing to verify Mr. Shaw's address for purposes of service of process, simply does not support liability. *See Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1123 (D. Kan. Aug. 29, 2008) ("Failure to comply with service of process . . . does not 'provide[ ] a legal basis to sustain a claim that the FDCPA has been violated." (quoting *Pierce v. Steven T. Rosso, P.A.*, No. 01-124, 2001 WL 34624006, at *2 (D. Minn. Dec. 21, 2001))). As a matter of law, such allegations fail, and cannot be repaired by amendment.

Finally, Mr. Shaw alleges that "stalling the filing of said complaint for over three months" also violates § 1692e(10) of the FDCPA. (ECF No. 1-2, at 25, ¶ 69.) The Court infers "said complaint" to be referring to the civil complaints filed in Mercer County. Section 1692e(10) of the FDCPA provides that "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is a deceptive act under the FDCPA. Here, where the Exhibits offered by Defendants appear to facially demonstrate the legitimacy of the debts sought (and at least do not reveal any plausibly false or deceptive content), and the Court can conceive of no basis by which any such claimed "stalling" could be classified

as "false" or "deceptive", Mr. Shaw has failed to plausibly show that Defendants employed any "false representation or deceptive means" to collect the alleged debts. In any event, Defendants' alleged delay in the filing of these civil complaints has not prejudiced Mr. Shaw in any way, as the statute of limitations for bringing an FDCPA claim on the basis of these civil complaints is one (1) year, and Mr. Shaw's civil action against Defendants was brought in this Court in that time frame. § 1692k(d) (*See* ECF Nos. 1-2, 12-1, and 12-2.) Accordingly, this alleged claim will be dismissed with prejudice, as no amendment would be viable, and in any event, there is no basis to conclude that any alleged "stalling" of the filing of the proceedings in the local state court had any negative impact on Mr. Shaw, nor is there any basis to conclude that any such alleged "stalling" violated the FDCPA.

### C. Non-FDCPA-Based Allegations

In addition to the Complaint's FDCPA-based allegations, Mr. Shaw raises several other claims against Defendants. The Court concludes that these additional, miscellaneous state law claims are either insufficiently pled or are improperly brought before this Court in this case.[13] In his Complaint, Mr. Shaw alleges that all Defendants engaged in fraud and/or "negligent misrepresentation" by bringing the collection action lawsuits against him. (*Id*. at 29 ¶ 82.) To plead a claim of fraud, a plaintiff must satisfy the heightened pleading requirements as provided under Federal Rule of Civil Procedure 9(b), which states that "a party must state with particularity the circumstances constituting fraud[.]" Mr. Shaw's Complaint proffers only bare-bones allegations of

---

[13] While not definitively set out in the Complaint, it appears that all of the Defendants are likely citizens of New Jersey for purposes of 28 U.S.C. 1332(a), so there may be diversity jurisdiction over these claims. The Court need not address that yet, as the Court will grant leave for the Plaintiff to attempt to amend as to a single portion of his FDCPA claim, as noted above. If that claim can be resurrected by amendment, then even without diversity jurisdiction, there may be supplemental jurisdiction under 28 U.S.C. 1367. If that thinnest of possible federal claims would evaporate, then the diversity jurisdiction question may take on importance.

fraud that are conclusory in nature and therefore do not satisfy this heightened pleading standard. Mr. Shaw's claims of fraud are therefore dismissed without prejudice and with leave to amend.

As for the claims of negligent misrepresentation, Mr. Shaw's Complaint is devoid of any facts sufficient to plausibly allege the elements of negligent misrepresentation. *See Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (stating that the four (4) elements of a negligent misrepresentation claim are as follows: "(1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct for protection of others against unreasonable risks; (2) failure to conform to the standard required; (3) a causal connection between the conduct and resulting injury; and (4) actual loss or damage resulting to interests of another"). Even applying a liberal construction of the allegations within Mr. Shaw's Complaint, the Court is unable to decipher any that would plausibly demonstrate the four (4) elements required to state a claim of negligent misrepresentation under Pennsylvania law. *See id.* As such, like his fraud claims, Mr. Shaw's claims of negligent misrepresentation will be dismissed without prejudice for failure to state a claim, but with leave to amend.

Mr. Shaw next asserts that Defendants' behavior violates various articles of Pennsylvania's Uniform Commercial Code (UCC) by "filing a mass produced law suit that [HHL] has not personally reviewed." (ECF No. 1-2, at 27), and specifically, Article 3 of the UCC because "Plaintiff never had a credit relationship with [Capital One]," and "the alleged negotiable instrument was fraudulent and/or misapplied by [Capital One] or was purchased by Defendant HHL, in a debt purchasing arrangement." (*Id*. at 29–30.) Mr. Shaw also alleges that Defendants violate Article 9 of the UCC in a similar fashion.

The UCC does not apply to what Mr. Shaw alleges: first, Capital One is not a named Defendant in this action nor could the Court discern any viable claims against anyone arising under

Pennsylvania's version of UCC. (*Id.*) Alternatively, Mr. Shaw's averments of Defendants' alleged violations under the UCC are conclusory at best. The Court dismisses Mr. Shaw's claims against Defendants in reliance on the UCC with prejudice. Amendment as to these claims would be futile because even if Mr. Shaw had the opportunity to bolster his Complaint with more facts, seeking relief via the UCC is not viable theory of recovery because: (1) no iteration of the facts presented could demonstrate that Mr. Shaw's disputed transactional relationship with Capital One or HHL falls into one of the definitions of a secured transaction as provided by Article 9, *see* 13 Pa. Const. Stat. § 9102; and (2) as for Article 3, Mr. Shaw's allegations as alleged in his Complaint center around a consumer credit account via Capital One, which is not a "negotiable instrument" as contemplated by Article 3 of Pennsylvania's UCC, *see* 13 Pa. Const. Stat. § 3104.

Third, Mr. Shaw seeks to "prosecute" the Defendants pursuant to the Hobbs Act, 18 U.S.C. § 1951 because HHL "knowingly caus[ed] interferences with Plaintiff's ability to engage in commerce[.]" (*Id.* at 36.) He also makes conclusory statements that HHL "should be investigated under [the Racketeer Influenced and Corrupt Organizations (RICO) Act] . . . and other federal charges[.]" (*Id.*) The Court dismisses the Hobbs Act claims with prejudice because civil plaintiffs in a federal civil action (like Mr. Shaw) lack standing to impose criminal liability. *See Conception v. Resnik*, 143 F. App'x 422, 425–26 (3d Cir. 2005) (citing *United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases[.]")). As for Mr. Shaw's alluding to RICO, Mr. Shaw has not stated any factual allegations pursuant to that statute and does not come remotely close to setting out the detail required in a RICO Case Statement under Local Civil Rule 7.1B, so the Court accordingly dismisses them without prejudice.

Finally, Mr. Shaw alleges that Defendants have brought these claims for debt collection against him without evidence (*Id.* at 13), which he argues runs afoul the Federal and the Pennsylvania Rules of Civil Procedure and Evidence. Violations of the federal or state rules of civil procedure and evidence "alone cannot form the basis of an FDCPA violation." *See Strader*, 2018 WL 741425, at *15 (concluding that asserting an FDCPA violation based on an alleged violation of the Federal Rules of Evidence could not form the basis of an FDCPA claim). Accordingly, the Court dismisses these claims with prejudice, as they fail as a matter of law, and cannot be repaired via amendment.

### D. <u>Request for Attorney's Fees</u>

Finally, the Court agrees with Defendants that to the extent that Mr. Shaw seeks attorney's fees, his demand for such "should be stricken from the Complaint, as *pro se* litigants are not entitled to recover such damages." (ECF No. 12.) *Lorenzo v. Palisades Collection, LLC*, No. 05-00886 2006 WL 891170, at *3 n.3 (D.N.J. Apr. 5, 2006). Accordingly, Mr. Shaw's demand for attorney's fees is stricken from the Complaint and dismissed with prejudice.

## IV.   <u>CONCLUSION</u>

Federal court lawsuits are intended to be a vehicle to resolve actual claims authorized by the law. They are not a vehicle for the broad and vague assertion of general grievances. While courts have a duty to liberally construe *pro se* filings, Mr. Shaw's Complaint and its allegations against either the individually named Defendants or as to HHL do not meet the pleading standards required to surmount a motion to dismiss, nor do the majority of his assertions come close to stating a cognizable claim under any of the FDCPA's provisions that could be repaired by an amendment. Accordingly, Defendants' Motion to Dismiss is **GRANTED** and Mr. Shaw's Complaint is **DISMISSED** as follows:

### *FDCPA Claims: Individual Defendants*

The Complaint's FDCPA claims based on §§ 1692d, e, f, or any other FDCPA provision raised in the Complaint against the named individual Defendants: Robert L. Baroska, Martin Rubin, Bryan J. Polas, Ashley Palaia, Joshua T. McNamara, and Robert W. Cusick, are **DISMISSED WITH PREJUDICE**.

### *FDCPA Claims: HHL*

To the extent Mr. Shaw alleges that HHL violated §§ 1692b or c for allegedly threatening to share information with a third party, these claims are **DISMISSED WITHOUT PREJUDICE** and leave to amend within thirty (30) days of the date of the issuance of this Opinion is granted. Any amendment must be filed by March 15, 2021.

All other claims against HHL brought pursuant to §§ 1692d, e, f, or any other FDCPA provision raised in the Complaint are **DISMISSED WITH PREJUDICE**.

### *Miscellaneous Claims*

The Complaint's claim of fraud is **DISMISSED WITHOUT PREJUDICE** and with leave to amend in accord with Federal Rule of Civil Procedure 9(b) within thirty (30) days of the date of the issuance of this Opinion, by March 15, 2021.

The Complaint's negligent misrepresentation claim is also **DISMISSED WITHOUT PREJUDICE** and with leave to amend within thirty (30) days of the date of the issuance of this Opinion, by March 15, 2021.

To the extent Mr. Shaw seeks to pursue a civil action under RICO, his claims are **DISMISSED WITHOUT PREJUDICE** and with leave to amend in accord with the applicable Local Rules of this Court within thirty (30) days of the date of the issuance of this Opinion, by March 15, 2021.

The Complaint's claims based on allegations that Defendants stalled the filing of the debt-collection lawsuits are **DISMISSED WITH PREJUDICE**.

The Complaint's claims based on allegations that Defendants violated (1) various rules of civil procedure and evidence or (2) the articles of the UCC are **DISMISSED WITH PREJUDICE**.

To the extent the Complaint seeks prosecution of Defendants via the Hobbs Act, the claims are **DISMISSED WITH PREJUDICE**.

Finally, to the extent that Mr. Shaw seeks attorney's fees under the FDCPA, this claim is **DISMISSED WITH PREJUDICE**.

While Mr. Shaw is entitled to a liberal construction of the claims he seeks to assert, they still have to be actual, cognizable claims, and this Court's docket is not some sort of dartboard toward which unsupported and conclusory grievances are tossed. That is in large measure the Court's assessment of what Mr. Shaw's filings have done so far. The Court cautions Mr. Shaw that the limited ability to amend authorized by this Opinion serves as a final opportunity to actually plead one or more claims cognizable in this Court, and within the narrow bounds of the limited opportunity to amend that is being provided. An appropriate Order shall issue.

 s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: February 12, 2021

cc:    All counsel of record
       Warren R. Shaw, *pro se* (by U.S. Mail)